## Case No. 8,186.

### LEE et al. v. CHILLICOTHE BRANCH BANK.

[1 Bond. 387; [1] 2 Leg. & Ins. Rep. 10.]

Circuit Court, S. D. Ohio. Oct. Term, 1860.

BILLS AND NOTES—WORDS OF INDORSEMENT—RESTRICTION.

1. The law does not require any particular form of words in the transfer of negotiable paper. Any words which show an intention to transfer a note or bill, without restriction or limitation, will constitute a valid indorsement, and the indorsee, upon non-payment, may resort to the prior parties.

2. An indorsement on a bill of exchange of the words, "Credit my account—James B. Scott, Cashier," is restrictive in its character, and suspends the further transfer and negotiability of the bill.

[Cited in Bank of Metropolis v. First Nat. Bank, 19 Fed. 303.]

3. Such an indorsement is sufficient to apprise subsequent indorsees of the bill that no authority existed authorizing a transfer to them.

[Cited in brief in Bristol Knife Co. v. First Nat. Bank, 41 Conn. 424.]

[This was an action by James Lee and Co. against the Chillicothe Branch Bank of the State of Ohio.]

H. H. Hunter and H. Stanbery, for plaintiffs.

C. D. Coffin, S. F. Vinton, and A. G. Thurman, for defendants.

LEAVITT, District Judge. The plaintiffs, as they allege, are the holders and indorsees of fourteen bills of exchange; and this action is brought against the Chillicothe branch of the State Bank of Ohio, as the indorser of the bills. They amount in the whole to about fifty thousand dollars, and were drawn by different persons at Chillicothe, on Edwin Ludlow, cashier of the Ohio Life Insurance and Trust Company at New York, payable to the order of James B. Scott, cashier. The declaration contains a special count on each of the bills, together with the usual money counts. It is averred that the Chillicothe Bank indorsed the bills by "the name of James B. Scott, its cashier;" and that, not being paid at maturity, they were protested for non-payment, of which the bank had due notice.

A jury has been sworn, and the plaintiffs to sustain their action have offered in evidence the several bills referred to. They are objected to by the counsel for the defendant, as not showing any title in the plaintiffs, or any right of action in them as indorsees.

---

[1] [Reported by Lewis H. Bond, Esq., and here reprinted by permission.]

This objection is urged by counsel, on several grounds, which have been brought to the notice of the court, and fully argued. In the brief views I propose to submit, I shall limit myself to the question: What is the construction and legal effect of the indorsements of the bills by Scott to Ludlow. If these indorsements restricted the further negotiability of the bills, it will be obvious that Ludlow had no authority to transfer them to the plaintiffs, and they can have no standing in courts as indorsees.

The indorsements on each of the bills is in these words: "Credit my account—James B. Scott, Cashier." And the question presented is, whether they import an unqualified and unrestricted transfer to Ludlow, with the right to transfer to others, and thus continue their circulation as negotiable paper. This, it is insisted by the counsel for the plaintiffs, is the legal effect of the indorsement to Ludlow. On the other hand, it is claimed that the indorsements by the cashier of the Chillicothe Bank were intended solely to authorize Ludlow to hold the bills until their maturity, and receive the proceeds, and place them to the credit of the bank; and that by a fair and natural construction of the words used, the intention to restrict the further negotiability of the paper is legally inferable. Or, if the paper could in any sense have been subsequently transferred by Ludlow, it could only be on the condition and for the purpose stated in Scott's indorsement, and that this limitation applies to it in the hands of any subsequent holder or transferee.

It is not controverted that the Chillicothe Bank, as the holder of the bills, had a right to direct to whom the proceeds should be paid, and to designate the specific purpose to which they were to be applied. And the only question is, whether the words, "credit my account," which precede the signature of Scott, imply an intention to qualify and restrict the operation of the indorsements. It is unquestionably true, that the law does not require any particular form of words in the transfer of negotiable paper. Any words which show an intention to transfer a note or bill, without restriction or limitation, will constitute a valid indorsement, and the indorsee upon nonpayment may resort to the prior parties. Indorsements, however, not intended to restrict the further negotiability of paper, are usually designated, either as in full, or in blank. An indorsement is said to be in full when the name of the assignee or transferee is stated without any words of limitation. The usual form of a full indorsement is: "Pay to A. B., or order." An indorsement in blank is perfected by the mere signature of the indorser across the back of the paper, without prefix or affix. In the latter case the paper may be subsequently transferred by delivery; but in either case it goes into circulation unclogged by any condition or limitation. These are familiar principles of commercial law, which do not require the citation of authorities to sustain them. It would seem to be a very clear proposition that the indorsements by Scott to Ludlow do not fall within either of the classes referred to. They are not indorsements in full, because there is no designation of the assignee or transferee. They are not blank indorsements, because there are words before the signature, which have significance, and which a subsequent holder would have no authority to strike out, and thus convert them into simple indorsements in blank.

In the progress of the arguments, very full references were made to elementary writers on the law of negotiable paper, and many reported cases have been cited bearing on the question before the court. It is hardly necessary to notice these authorities in detail. It may be stated, however, that the general doctrine sustained by the authorities and cases cited, is that effect will be given to any words used by an indorser, showing the specific purpose of the indorsement, and directing payment to be made to a particular person or for a special purpose; and that subsequent holders of the paper take it subject to the limitation imposed. That the words, "credit my account," which precede the name of Scott in the indorsements under consideration, are within this principle, seems quite clear. It is true that among the many cases cited by counsel, there are none in which this precise form of words is used. But the principle is fully recognized, and these authorities are entitled to respect as giving it the highest judicial sanction. Without stopping to analyze the many cases referred to, in which indorsements have been held to be restrictive in their character, as suspending the further negotiability of commercial paper, the following instances may be briefly stated: "Pay to my use." "Pay to A. only." "Pay the contents to the use of B. only." "Pay the money to my servant for my use." "Carry this bill to the credit of A." "The within must be credited to L. H. value in account." "Pay to J. P., or order, for account of T. & W." Chit. Bills, 176, 177; Byles. Bills, 121 (marginal paging); Edw. Bills & N. 277, 278; Story, Bills, § 211; 2 Burrows, 1227; Doug. 637; 8 Taunt. 100, 15 E. C. L. 319; 3 Mass. 227, 5 Mass. 544.

As before intimated, the words, "credit my account," can not be supposed to have been used without a meaning and a purpose. They were clearly intended as a naked authority to Ludlow to receive the proceeds of the bills, and credit them to the account of the Chillicothe Bank. This is their fair import; and that they were so intended by Scott can not be doubted. He is the cashier of an important banking institution, and may be presumed to be familiar with all the different ways of transferring negotiable paper. He is, without doubt, cognizant, not only of the form, but the legal effect of the

various species of indorsements in use among bankers and commercial men. That he did not intend the transfer of the paper to Ludlow to have the effect of the usual indorsement, either in full or in blank, may be inferred from the fact that the words used negative such a purpose. Why adopt the words, "Credit my account," if the usual indorsement had been intended? The words are equivalent to a direction to Ludlow to credit the proceeds to the Chillicothe Bank on account, instead of making an actual remittance of the funds. They are in effect, as if he had written: "Pay the proceeds to the bank, by a credit of the amount to its account." If such had been the form of the indorsements, could there have been a possible doubt as to their meaning?

Although in the present posture of this case, the court can not notice the known course of business between Ohio banks and those in New York, or the business relations existing between the institution represented in that city by Ludlow, and the Chillicothe Branch Bank, yet it is not perhaps a strained inference from the words used by Scott, that there were existing accounts between them, and a balance due from the latter to the former, which was to be reduced or paid by the application of the proceeds of the bills in question. The transaction is susceptible of this view from the language in which the indorsements are couched. And thus viewed, it needs no argument to prove that it was decidedly in bad faith for Ludlow to use the paper for a purpose not in the contemplation of the indorser, and greatly to the hazard of the Chillicothe Bank. This, it is true, under ordinary circumstances, could not affect the rights of these plaintiffs without knowledge of the dishonest purpose of Ludlow in making the transfer. But the words of the indorsements to Ludlow, were sufficient to apprise the plaintiffs of the real character of the transaction, and operate as a notice to them that Ludlow had no authority to indorse the paper to them, so as to divert the proceeds from the object intended. I confess to some incredulity as to the good faith of the plaintiffs in this transaction. I am slow to believe that a banker or business man, of reasonable intelligence, with the qualified indorsement of Scott before him, would have taken this paper, with the hope or expectation that the Chillicothe Bank would be liable as an indorser, in case of non-payment by the drawers.

It would not be proper to indulge in any speculative remarks in regard to this transaction, as between Ludlow and the plaintiffs. There may be facts involved which will never be brought to the light of day, and which, if fully developed, would reveal great frauds. This consideration, however, can not influence or control the decision of the court, on the question before it. There seems to be enough, in the very vestibule of this case, to warrant the legal conclusion that these plaintiffs received the bills in question with full notice that Ludlow had no right to transfer them in any other sense, or for any other purpose than that indicated by the terms of the indorsements, and that they have no standing in court as indorsees, and no right of action on these bills. In the judgment of the court, therefore, these bills can not go in evidence to the jury.

As this view is decisive of the case, it is unnecessary to discuss the other objection presented by counsel, namely: that the official character of Scott, as the cashier of the Chillicothe Branch Bank, does not appear in the bills, or by his indorsement, so as to create a legal liability in the bank as indorser. The point has been strenuously urged by counsel, but for the reason indicated, I give no opinion upon it.

The plaintiff thereupon submitted to a non-suit.

[For another case between the same parties, involving the same points and the same matter, see Case No. 8,187.]